UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| SKIPPER MARINE CORPORATION | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | No. |
| v. | : | |
| | : | |
| AZIMUT BENETTI S.PA. and | : | |
| MARINEMAX, INC. | : | |
| *Defendants* | : | |
| | : | |

## NOTICE OF REMOVAL OF
## DEFENDANT AZIMUT BENETTI, S.P.A.

Defendants Azimut Benetti S.P.A. (hereinafter individually, "Azimut") removes this action from the Circuit Court of Wisconsin, Waukesha County where it is currently pending under docket number 12-cv-03346 to the United States District Court for the Eastern District of Wisconsin and in support thereof avers as follows[1]:

**I.     STATEMENT OF FACTS**

1.     This case arises out of Azimut's termination of Plaintiff Skipper Marine Corporation (hereinafter, "Skipper Buds" or "Plaintiff") as the exclusive dealer of Azimut vessels in Minnesota, Wisconsin, Iowa, Illinois, North and South Dakota, Missouri, Kansas, Arkansas, Ohio, Kentucky, Indiana and Michigan. (Compl. at ¶¶ 5, 13, 14). A true and correct copy of the Complaint is appended hereto as Exhibit "A."

2.     Skipper Buds "is a Wisconsin corporation whose principal place of business is located at 214 North Point Drive, Winthrop Harbor, Illinois 60096." (Compl. at ¶ 1).

---

[1] Defendant MarineMax, Inc. (hereinafter, "MarineMax") does not need to either consent to or join in the removal of this case because, to date, it has not been properly served. 28 USCS § 1446(b)(2)(A) ("When a civil action is removed . . . all defendants who have been properly *joined and served* must join in or consent to the removal of the action.") (emphasis added).

3. "Azimut is an Italian corporation whose principal place of business is located at Via Michele Coppino 104, Viareggio (Lucca), Italy." (Compl. at ¶ 2).

4. MarineMax is a Delaware corporation "whose principal place of business is located at Suite 300, 18167 U.S. Highway 19, North Clearwater, [Florida] 33764." (Compl. at ¶ 3).

5. As discussed in greater detail below, the amount in controversy easily exceeds $75,000 given that Skipper Buds is seeking to recover over $2 million from Azimut for the two yachts it previously purchased from Azimut. (Compl. at ¶¶ 17, 18).

6. On or about December 3, 2012, Azimut was served with a copy of the Summons and Complaint. A true and correct copy of the Summons is attached hereto as Exhibit "B."

7. Azimut manufacturers luxury yachts in Italy which are sold throughout the world including within the United States.

8. Skipper Buds previously acted as the exclusive dealer for Azimut vessels in the agreed upon sales territory noted above.

9. The terms of this business relationship were memorialized in a series of dealership contracts between Skipper Buds and Azimut, the last of which was executed on January 17, 2010 (hereinafter, the "Dealership Contract"). A true and correct copy of the Dealership Contract is appended hereto as Exhibit "C."

10. The Dealership Contract, by its terms, expired on September 15, 2011, but Skipper Buds allegedly continued to act as Azimut's exclusive dealer, in the contractually specified sales territory, after this date. (Compl. at ¶ 12; Dealership Contract at 2(i)).

11. Of particular importance, the Dealership Contract contains a mandatory arbitration clause that reads as follows:

2

> Any dispute arising out or in connection with the execution, interpretation or termination of this Contract or the relationship between Dealer and Azimut must be exclusively submitted by the Parties to and determined by a sole arbitrator in the City of Turin in accordance with the Rules of the Turin Chamber of Commerce and the Italian Civil Code, such arbitrator to be legally qualified and to be appointed by agreement between the parties or (failing agreement within fourteen days after written request referred to) by the President of the Turin Chamber of Commerce. The decision of the sole arbitrator will be final and binding.

(Dealership Contract at ¶ 20.7).

12. Additionally, paragraph 17.1 of the Dealership Contract specifically states "[t]he provisions of Articles 14, 16, 18, 19 and 20 shall survive the expiration or termination of . . ." the Dealership Contract; the mandatory arbitration clause appears in Article 20 of the Dealership Contract. (Dealership Contract at ¶¶ 17.1, 20.7).

13. MarineMax replaced Skipper Buds as the exclusive dealer for Azimut vessels in the contractually specified territory in August 2012. (Compl. at ¶¶ 13, 14).

14. Prior to being terminated as an exclusive Azimut dealer, Skipper Buds purchased two yachts from Azimut allegedly at a cost of over $2 million. (Compl. at ¶¶ 17, 18).

15. These yachts purportedly remain in Skipper Buds' inventory because Azimut has refused to repurchase them from Skipper Buds. (Compl. at ¶¶ 17, 18).

16. Based upon the foregoing, Skipper Buds filed a five (5) count civil action Complaint against Skipper Buds and MarineMax with the Circuit Court of Wisconsin, Waukesha County on November 13, 2012.

17. The claims asserted in the Complaint are as follows: (1) Breach of Implied Contract; (2) Breach of Covenant of Good Faith and Fair Dealing; (3) Promissory Estoppel; (4) Intentional Interference with Contractual Relationship; and (5) Intentional Interference with Prospective Contractual Relationship.

18. Azimut is providing Plaintiff with written notification of the Notice and is concurrently filing a copy with the Waukesha County Circuit Court, Wisconsin (see Exhibit D), pursuant to 28 U.S.C. §1446(a) and (d).

## II. ARGUMENT

### A. This case may be removed to federal court on the basis of federal question jurisdiction pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

19. This case may be removed to federal court on the basis of federal question jurisdiction pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter, the "Convention").

20. "The Convention . . . which is codified at 9 U.S.C. §§ 201-208, governs the *enforcement, validity* and interpretation of arbitration agreements between United States citizens and citizens of foreign countries." *Seth Peterson Cottage Conservancy, Inc. v. Goodyear Tire and Rubber Co., Inc.*, 2003 U.S. Dist. LEXIS 25934, at *3 (W.D.Wis. 2003) (emphasis added); *see also Authenment v. Ingram Barge Co.*, 2012 U.S. Dist. LEXIS 97250, at *7 (E.D.La. 2012) ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards . . . governs cases in which a party seeks to compel arbitration outside of the United States.").

21. "[F]ederal district courts have original jurisdiction over actions falling under the Convention."[2] *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290 (11th Cir. 2004); *see*

---

[2] The Seventh Circuit explained this grounds for jurisdiction as follows:
> There is an independent grant of federal subject matter jurisdiction in the legislation implementing the Convention . . . : 'An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.' Federal question jurisdiction unquestionably exists in cases arising under the Convention. . . .

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 500 F.3d 571, 581 n.9 (7th Cir. 2007).

*also Sea Bowld Marine Group, LDC v. Oceanfast Pty, Ltd.*, 432 F.Supp.2d 1305, 1308 (S.D.Fla. 2006) ("Federal courts have jurisdiction over actions arising under the Convention.").

22. The statutory grant of federal question jurisdiction under the Convention reads as follows:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28 [28 USCS § 460]) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

*9 USCS § 203*.

23. The removal provision appearing in the Convention reads as follows:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. . . . [A]ny action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

*9 USCS § 205*.

24. Federal question jurisdiction clearly exists over this case because of the mandatory arbitration clause appearing in the Dealership Contract.

25. The arbitration clause is between a citizen of the United States, Skipper Buds, and a citizen of a foreign country, Azimut. Skipper Buds is a United States citizen because it is incorporated in Wisconsin and has a principal place of business in Illinois. Azimut is a citizen of Italy since it is incorporated in that country and has a principal place of business in Italy as well.

5
Case 2:12-cv-01274-JPS   Filed 12/13/12   Page 5 of 9   Document 1

26. Moreover, Azimut will be filing a motion to compel arbitration in Turin, Italy pursuant to § 206 of the Convention.[3] *See 9 USCS § 206* ("A court having jurisdiction under this chapter . . . may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

27. Accordingly, this case may properly be removed to federal court on the basis of federal question jurisdiction.

**B. In the alternative, this case may be removed to federal court on the basis of diversity jurisdiction because complete diversity exists between the parties and the amount in controversy easily exceeds $75,000.[4]**

28. In the alternative, this case may be removed to federal court on the basis of diversity jurisdiction because complete diversity exists between the parties and the amount in controversy easily exceeds $75,000.

29. Diversity jurisdiction arises where there is "complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000. . . ." *WDH LLC v. Sobczak-Slomczewski*, 2012 U.S. Dist. LEXIS 1715, at *2 (W.D.Wis. 2012).

30. Likewise, "diversity jurisdiction exists in an action between citizens of a [s]tate and citizens or subjects of a foreign state . . . ." where the amount in controversy exceeds

---

[3] *See also Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1262-63 (11th Cir. 2011) (discussing available causes of action).
> To implement the Convention, Chapter 2 of the [Federal Arbitration Act] provides two causes of action in federal court for a party seeking to enforce arbitration agreements covered by the Convention: (1) an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206, and (2) at a later stage, an action to confirm an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207.

*Id.*

[4] This notice of removal is timely because counsel for Azimut accepted service of the Complaint on December 3, 2012. A notice of removal, founded upon diversity jurisdiction, must be filed within thirty (30) days of the date when the defendant receives a copy "the initial pleading setting forth the claim for relief upon which such action or proceeding is based. . . ." *28 USCS § 1446(b)(1)*. Based upon the above, the deadline for Azimut to remove this case to federal court, on the basis of diversity jurisdiction, is Wednesday, January 2, 2013.

$75,000. *GE Healthcare v. Orbotech, Ltd.*, 2009 U.S. Dist. LEXIS 72221, at *8 (E.D. Wis. 2009).

31. A corporate defendant, for purposes of diversity jurisdiction, is deemed a citizen of both "(1) [its] state of incorporation; and (2) the state in which the corporation has its principal place of business." *Reimer-Becker v. Guar. Fin. Corp.*, 2012 U.S. Dist. LEXIS 106372, at *5 (E.D.Wis. 2012); *see also Hoagland v. Sandberg, Phoenix & Von Gontard, P.C.*, 385 F.3d 737, 741 (7th Cir. 2004) ("The [diversity] statute states flatly that a corporation is a citizen of the state in which it is incorporated and also the state in which its principal place of business is located.").

32. Restated, "[a] corporation . . . has two places of citizenship: where it is incorporated, and where it has its principal place of business." *Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 676 (7th Cir. 2006).

33. "A company's principal place of business is where its nerve center is located, or, more concretely, where its executive headquarters are located." *Ill. Bell Tel. Co. v. Global Naps Ill., Inc.*, 551 F.3d 587, 590 (7th Cir. 2008); *see also MapQuest, Inc. v. Civix-Ddi, LLC*, 2009 U.S. Dist. LEXIS 76817, at *3 (N.D.Ill. 2009) ("In the Seventh Circuit, a company's principal place of business is where its nerve center is located, or, more concretely, where its executive headquarters are located as of the filing of the notice of removal.").

34. Complete diversity exists between the parties to this litigation and the amount in controversy, based upon the allegations in the Complaint, exceeds $75,000.

35. The citizenship of the parties to this lawsuit is as follows: (1) Skipper Marine is incorporated in Wisconsin with a principal place of business located in Illinois; (2) MarineMax is incorporated in Delaware with a principal place of business located in Florida; and (3) Azimut is an Italian corporation with a principal place of business located in Italy.

36. As a result, complete diversity exists between the parties to this litigation.

37. Furthermore, the amount in controversy easily exceeds $75,000 given that Skipper Marine's investment in the two Azimut boats, standing alone, allegedly exceeds $2 million.

38. Therefore, this case may also be removed to federal court on the basis of diversity jurisdiction.

**WHEREFORE**, Defendants Azimut Benetti S.P.A. respectfully requests that this civil action be removed from the Circuit Court of Wisconsin, Waukesha County to the United States District Court for the Eastern District of Wisconsin.

Dated at Milwaukee, Wisconsin this 13th day of December, 2012.

/s/ Nathaniel Cade, Jr.
Joseph M. Fasi, II, Esquire
State Bar No. 1006655
Nathaniel Cade, Jr., Esquire
State Bar No. 1028115
*Attorneys for Defendant Azimut Benetti S.P.A.*
GONZALEZ SAGGIO & HARLAN, LLP
111 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-277-8500
Fax: 414-277-8521
Email: nate_cade@gshllp.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date shown below a true and correct copy of Defendant's notice of removal, along with all appended materials, was served via first class mail, postage prepaid, as follows:

>Peter M. Sommerhauser, Esquire
>William E. Duffin, Esquire
>**Godfrey & Kahn, S.C.**
>780 North Water Street
>Milwaukee, WI 53202-3590

>*/s/Nathaniel Cade, Jr.*
>Nathaniel Cade, Jr.

Date: December 13, 2012