# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SKIPPER MARINE HOLDING INC., <br><br> Plaintiff, <br><br> v. <br><br> AZIMUT BENETTI S.p.A., <br><br> Defendant. | Case No. 12-CV-1274-JPS <br><br> ORDER |

1. BACKGROUND

Plaintiff Skipper Marine Holding Inc. ("Skipper"), a Midwestern-U.S.-based boat dealer, seeks various redress from defendant Azimut Benetti S.p.A. ("Azimut"),[1] an Italian yacht manufacturer, in connection with termination of the parties' yacht-distribution relationship.

To that end, Skipper filed a complaint in the Circuit Court of the State of Wisconsin, Waukesha County, on November 13, 2012, bringing five claims relating to termination of the parties' yacht-distribution relationship: (i) breach of implied contract; (ii) breach of covenant of good faith and fair dealing; (iii) promissory estoppel; (iv) intentional interference with contractual relationship; and (v) intentional interference with prospective contractual relationship. (Docket #1-1).

Subsequently, Azimut filed a notice of removal in this Court based on: (i) Azimut's contention that the subject matter of the complaint is covered by an arbitration agreement that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C.

---

[1] The parties do not dispute that Azimut is an Italian corporation. *See infra* Section 2.1. Ostensibly a *Società per Azioni* (S.p.A), Azimut is improperly designated. *See e.g.,* (Docket #1-3, 2).

§§ 202 and 205 (*i.e.*, a federal question by virtue of 9 U.S.C. § 203) (Docket #1, 4); and (ii) the parties' complete diversity of citizenship and a sufficient amount in controversy, 28 U.S.C. §§ 1332 and 1446. (Docket #1, 6).

Now, Azimut moves to dismiss or, in the alternative, compel arbitration. (Docket #4). Skipper opposes each motion. (Docket #s 11 and 17-1[2]).

2.  JURISDICTION

Azimut proposes two bases for this Court's original subject matter jurisdiction over Skipper's action: diversity of citizenship (with the requisite amount in controversy), 28 U.S.C. § 1332, and a federal question arising under the Convention, 9 U.S.C. § 203. The Court will address each basis in turn.

    2.1   28 U.S.C. § 1332

With regard to jurisdiction under § 1332, it is undisputed that: (i) Skipper is a Delaware corporation whose principle place of business is located in Illinois (Docket #20, 1); (ii) Azimut is an Italian corporation whose principle place of business is located in Italy (Docket #1, 2); and (iii) Skipper complains, *inter alia,* that "Azimut has refused and continues to refuse to repurchase" two Azimut yachts Skipper holds in inventory representing a "combined investment" of "over $2 million" (Docket #1-1, 6-7). Therefore, the parties' citizenship is diverse within the meaning of 28 U.S.C. § 1332 (a)(2) and the amount-in-controversy requirement of § 1332 is satisfied. Subject matter jurisdiction exists under § 1332.

---

[2] For the sake of completeness of the record, the Court will grant both Skipper's motion for leave to file a sur-reply brief in opposition to Azimut's motions (Docket #17) and Azimut's motion for leave to file a response to Skipper's sur-reply brief (Docket #18).

### 2.2 9 U.S.C. § 203

#### 2.2.1 The Convention

Chapter Two of the Federal Arbitration Act ("FAA") implements the Convention in the United States Code. "An arbitration agreement…arising out of a legal relationship, whether contractual or not, which is considered as commercial…falls under the Convention" when at least one non-U.S. citizen is a party to that relationship. 9 U.S.C. § 202.[3] In turn, Section 203 provides that "[a]n action…falling under the Convention shall be deemed to arise under the laws and treaties of the United States" and "[t]he district courts of the United States…shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

Therefore, if this Court finds that the subject matter of Skipper's complaint is covered by an arbitration agreement arising out of a legal relationship (commercial in nature) between the parties, Section 203 constitutes an independent basis for subject matter jurisdiction over this action.[4]

#### 2.2.2 Is The Subject Matter of Skipper's Complaint Covered By An Arbitration Agreement Falling Under The Convention?

To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir.2002). Once it is clear, however, that the

---

[3] When the relationship is entirely between citizens of the United States, a statutorily sufficient non-U.S. nexus is necessary.

[4] Azimut is the requisite non-U.S. citizen because, as noted above, it is incorporated in Italy and its principle place of business is in Italy. *See* Section 202 ("[A] corporation is a citizen of the United States if it is incorporated or has its principle place of business in the United States").

> parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir.1998). "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir.1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

*Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032-1033 (7th Cir. 2012)

### 2.2.2.1 Relevant Factual Background

Skipper's complaint brings claims relating to termination "[i]n or about August 2012" of the parties' yacht-distribution relationship. (Docket #1-1, 5-8). The parties agree that the most recent written contract governing their relationship was executed on January 17, 2010, and expired by its terms (save for surviving provisions) on September 15, 2011 (the "Written Contract"). (Docket #1-3, 3 and 20); (Docket #11, 2 n.1).

According to Skipper's complaint, the parties' course of conduct following expiration of the Written Contract "manifested the parties' mutual intent to continue Skipper Marine's dealership" and their relationship ended only when Skipper learned (and Azimut confirmed) that MarineMax had taken over Skipper's exclusive dealership territory. (Docket #1-1, 5). Likewise, Azimut submits that the parties' commercial relationship endured beyond the term of the Written Contract. (Docket #16, 13).

Section 17.1 of the Written Contract provides:

> The Provisions of Articles 14, 16, 18, 19 and 20 shall survive the expiration or termination of this Agreement and any claims Azimut may have for the collection of money or the enforcement of any obligations which may be in the nature of continuing obligations shall also survive the expiration or termination of this Agreement.

(Docket # 1-3, 14).

In turn, Section 20.7 of the Written Contract provides:

> Any dispute arising out or in connection with the execution, interpretation or termination of this Contract or the relationship between [Skipper] and Azimut must be exclusively submitted by the Parties to and determined by a sole arbitrator in the City of Turin in accordance with the Rules of the Turin Chamber of Commerce and the Italian Civil Code, such arbitrator to be legally qualified and to be appointed by agreement between the parties or (failing agreement within fourteen days after the written request referred to) by the President of the Turin Chamber of Commerce. The decision of the sole arbitrator will be final and binding.

(*Id.* at 20).

### 2.2.2.2 Is the Arbitration Clause Valid?

> [W]hen parties commit to arbitrate contractual disputes, it is a mainstay of the [FAA's] substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved "by the arbitrator in the first instance, not by a federal or state court." *Preston v. Ferrer*, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). For these purposes, an "arbitration provision is severable from the remainder of the contract," *Buckeye* [*Check Cashing, Inc. v. Cardegna*, 546 U.S. 440] at 445, 126 S.Ct. 1204, and its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide.

*Nitro-Lift Technologies, L.L.C. v. Howard*, 133 S.Ct. 500, 503 (2012); *see generally* 9 U.S.C. § 208 (providing for residual application of Chapter One of the FAA (General Provisions) to Chapter Two of the FAA (which implements the Convention)).

In its sur-reply brief, Skipper mounts a (belated) attack on the validity of the arbitration clause in Section 20.7 of the Written Contract. Skipper's attack reasons that because the parties agree that "application of the survival clause to the Article 18 termination provisions is 'bizarre' and does not make sense" (Docket #18-1, 6; #11, 9; and #17-1, 3), the parties were mutually mistaken at formation in extending survivability to Article 18 *and so the survival clause should be deleted wholesale as the product of a mutual mistake* (Docket #17-1, 3).

The Court finds that Skipper's conclusion (italicized above) is not supported by law. Even if the parties were mutually mistaken at formation in extending survivability to Article 18 (Termination), Skipper cites no Wisconsin law sufficient to support its conclusion that Article 17 (Survival) – which on its terms causes *five distinct* contractual articles to survive – should be deleted wholesale.[5] Therefore, the Court finds Skipper's argument fails and the arbitration clause is valid.

---

[5] Notwithstanding the fact that Section 20.6 of the Written Contract provides that "[t]his agreement and the rights and obligations of the parties hereunder shall be governed by and constructed in accordance with the laws of Italy, without regard to conflicts of laws[,]" the parties' briefs make no mention of this choice of law provision and exclusively cite to American law (and to Wisconsin state law in particular for principles of contract). Therefore, the parties have waived the issue of the applicable law. *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436, 438 (7th Cir. 2012).

### 2.2.2.3 Does The Arbitration Clause Fall Under The Convention?

Here, the arbitration clause is part of the Written Contract and so it clearly arises out a legal relationship (commercial in nature) between parties which include a non-U.S. citizen (Azimut). 9 U.S.C. § 202. Therefore, the arbitration clause falls under the Convention.

### 2.2.2.4 Is The Subject Matter of Skipper's Complaint Covered By The Arbitration Clause?

As noted in Section 2.2.2 *supra*:

> Once it is clear…that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir.1998). "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir.1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

*Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032-1033 (7th Cir. 2012)

Here, the Court found the arbitration clause to be valid. *See supra* Section 2.2.2.2. By its terms, the arbitration clause applies to "[a]ny dispute arising out or in connection with the execution, interpretation or termination of this Contract *or the relationship between [Skipper] and Azimut….*" (Docket #1-3, 20) (emphasis added).

According to Skipper's complaint, the parties' course of conduct following expiration of the Written Contract "manifested the parties' mutual intent to continue Skipper Marine's dealership" and their relationship ended

Page 7 of 10

Case 2:12-cv-01274-JPS   Filed 04/04/13   Page 7 of 10   Document 23

only when Skipper learned (and Azimut confirmed) that MarineMax had taken over Skipper's exclusive dealership territory. (Docket #1-1, 5).[6] Now, Skipper brings claims related to termination of that continued relationship. (Docket #1-1, 5-8).

Against this factual backdrop and with the benefit of the teachings of *Gore*, the Court is obliged to find that the subject matter of Skipper's complaint is covered by the arbitration clause. The arbitration clause is drafted broadly to capture the parties' relationship (instead of only disputes arising from the Written Contract itself) and Article 17.1 plainly causes the arbitration clause to survive the Written Contract's expiration. It is undisputed that the parties' commercial relationship continued after the term of the Written Contract expired (Docket #1-1, 5; #16, 13), and Skipper's claims plainly relate to that relationship, (Docket #1-1). Therefore, the subject matter of Skipper's complaint is covered by the arbitration clause. Because the arbitration clause falls under the Convention, Section 203 of the FAA constitutes an independent basis for subject matter jurisdiction over this action.[7]

3. MOTION TO DISMISS OR COMPEL ARBITRATION

Azimut moves, in the alternative: (i) to dismiss Skipper's complaint on grounds that this Court is not the proper venue for the claims to be heard on the merits; or (ii) to compel arbitration. (Docket #4; #5, 10).

In general, "[a] lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss."

---

[6] Likewise, Azimut submits that the parties' commercial relationship endured beyond the term of the Written Contract. (Docket #16, 13).

[7] Skipper's briefing ignores the plain language of the arbitration clause and consequently cites a litany of inapposite cases.

*Continental Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 606-607 (7th Cir. 2003) (citations omitted). "Arbitration clauses, the Supreme Court has held, are a species of forum selection clause." *Automobile Mechanics Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) (citation omitted). Here, the arbitration clause falls under the Convention because it arises out of an international commercial agreement (the Written Contract). *See* Section 2.2.2.3 *supra*.

> In general, the [FAA] creates a strong presumption in favor of arbitration, *especially in international commercial agreements*. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-40, 105 S.Ct. 3346, 3359-61, 87 L.Ed.2d 444 (1985); *Scherk v. Alberto Culver Co., 417 U.S. 506*, 519-20, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974).

*Jain v. de Mere*, 51 F.3d 686, 688-689 (7th Cir. 1995) (emphasis added).

With the benefit of the foregoing analysis (and given the Court's finding that Section 203 of the FAA constitutes an independent basis for subject matter jurisdiction over this action), the Court will: (i) grant Azimut's motion to compel arbitration of Skipper's claims in accordance with Section 20.7 of the Written Contract, 9 U.S.C. § 206;[8] and (ii) deny without prejudice Azimut's motion to dismiss for improper venue.

Accordingly,

---

[8] Section 206 of Chapter Two of the FAA (the chapter implementing the Convention) provides, in relevant part, "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."

IT IS ORDERED that Defendant's motion to compel arbitration (Docket #4) be and the same hereby is GRANTED; Skipper's complaint shall be submitted to arbitration in accordance with Section 20.7 of the Written Contract;

IT IS FURTHER ORDERED that the parties shall electronically file a joint status report on or before October 1, 2013, and every 90 days thereafter;

IT IS FURTHER ORDERED that Defendant's motion to dismiss for improper venue (Docket #4) be and the same hereby is DENIED without prejudice;

IT IS FURTHER ORDERED that Plaintiff's motion for leave to file a sur-reply brief (Docket #17) be and the same hereby is GRANTED; and

IT IS FURTHER ORDERED that Defendant's motion for leave to file a response to Plaintiff's sur-reply brief (Docket #18) be and the same hereby is GRANTED.

The Clerk of the Court is directed to administratively close this matter.

Dated at Milwaukee, Wisconsin, this 4th day of April, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge